UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:25-cv-00062-MR-DCK

| | | |
|---|---|---|
| **DEVON SCOTT CROSBY,**<br><br>**Plaintiff,**<br><br>**vs.**<br><br>**FNU HINSLEY, et al.,**<br><br>**Defendants.** | ) | **MEMORANDUM AND RECOMMEDATION** |

**THIS MATTER** is before the Court on Defendants' Motion for Summary Judgment (Document No. 27). This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b) and is now ripe for disposition. Having carefully considered the arguments, the record, and applicable authority, the undersigned will respectfully recommend that Defendants' motion be granted.

## I. BACKGROUND

Pro se Plaintiff Devon Scott Crosby ("Plaintiff") is a prisoner of the State of North Carolina currently incarcerated at Marion Correctional Institution in Marion, North Carolina. On April 23, 2025, he filed this action pursuant to 42 U.S.C. § 1983 by unverified Complaint against four officials at Alexander Correctional Institution ("Alexander"): FNU Hinsley and FNU Carl, both identified as Sergeants, and FNU Harrison and FNU Baker, both identified as Correctional Officers. (Document No. 1). Plaintiff sued Defendants in their individual and official capacities. (Id. at 2-3). Plaintiff's Complaint passed initial review on his individual capacity Eighth

Amendment excessive force claims against Defendants Hinsley, Harrison, and Baker.[1] (Id. at 5-7). The Court dismissed Plaintiff's official capacity claims and Defendant Carl for Plaintiff's failure to state a claim for relief.[2] (Id. at 4-7).

Defendants moved for summary judgment. (Document No. 27). As grounds, Defendants argue that there is no genuine issue of material fact because Defendants did not violate Plaintiff's constitutional rights. (Document No. 28 at 8-14). Defendants also argue they are entitled to qualified immunity because there was no constitutional violation and because the individual rights were not clearly established. (Id. at 14-15). In support of their motion, Defendants submitted a brief, their own Declarations and a Declaration of Counsel, Plaintiff's Offender Information Report, Plaintiff's infraction history, the North Carolina Department of Adult Correction (NCDAC) Use of Force Policy, an Incident Report, and video footage of the incident.[3] (Document Nos. 28, 29, 29-1 to 29-9, 33).

The undersigned entered an Order in accordance with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising the Plaintiff of the requirements for filing a response to the summary

---

[1] The undersigned will direct the Clerk to update the docket with the true full names of these Defendants as Christopher R. Hansley, Trenton J. Harrison, and Adam W. Baker, respectively.

[2] The Court also dismissed without prejudice allegations in Plaintiff's Complaint directed at individuals not named as Defendants. (Document No. 5 at 6). That is, Plaintiff had alleged that "other officers," who arrived after the alleged use of excessive force that survived initial review here, also used excessive force on him. (Id. at 5). As noted, Plaintiff did not name these individuals as Defendants in the case caption or in the body of the Complaint, attempt to identify or name them as John or Jane Doe Defendants or otherwise enumerate them, and did not attempt to amend his Complaint at any time to name them as Defendants in some form. Cf. Nichols v. Bumgarner, 173 F.4th 511 (4th Cir. 2026) (amended complaint that identified prison official by name and as one of the two perpetrator "defendants" of alleged excessive force was sufficient to put law enforcement officer on notice that he was intended as party defendant despite plaintiff's failure to list him in the case caption).

[3] The video footage of the incident was submitted in four files named "C118 Green Elevator Sallyport," "C119 Green Housing South Hallway," "C131 Green South Control Rm," and "C137 Green South F Wing#2." The Court will hereinafter cite this footage as "C118," "C119," "C131," and "C137," respectively.

judgment motion and of the manner in which evidence could be submitted to the Court. (Document No. 31). Plaintiff was specifically advised that he "may not rely upon mere allegations or denials of allegations in his pleadings to defeat a summary judgment motion." (Id. at 2). Rather, he must support his assertion that a fact is genuinely disputed by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." (Id. (citing Fed. R. Civ. P. 56(c)(1)(a))). The Court further advised that:

> An affidavit is a written statement under oath; that is, a statement prepared in writing and sworn before a notary public. An unsworn statement, made and signed under the penalty of perjury, may also be submitted. Affidavits or statements must be presented by Plaintiff to this Court no later than fourteen (14) days from the date of this Order and must be filed in duplicate.

(Id. at 3 (citing Fed. R. Civ. P. 56(c)(4))).

Plaintiff did not file a response to Defendants' summary judgment motion, and the deadline to do so has expired. Also, as noted, Plaintiff's Complaint was not verified or otherwise submitted under penalty of perjury and, therefore, cannot be considered for its evidentiary value here. See Goodman v. Diggs, 986 F.3d 493, 498-99 (4th Cir. 2021) (holding that a district court is to consider verified prisoner complaints as affidavits on summary judgment "when the allegations contained therein are based on personal knowledge"). As such, Defendants' forecast of evidence is uncontroverted.

This matter is now ripe for adjudication.

## II. STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. Rather, the nonmoving party must oppose a proper summary judgment motion with citation to "depositions, documents, electronically stored information, affidavits or declarations, stipulations …, admissions, interrogatory answers, or other materials" in the record. See id.; Fed. R. Civ. P. 56(c)(1)(a). Namely, the nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; accord Sylvia Dev. Corp. v. Calvert County, Md., 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and construe all reasonable inferences and ambiguities against the movant and in favor of the nonmoving party. Wai Man Tom v. Hospitality Ventures LLC, 980 F.3d 1027, 1037 (4th Cir. 2020); see Anderson, 477 U.S. at 255. Facts, however, "must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380

(2007). As the Supreme Court has emphasized,

> "[w]hen the moving party has carried its burden under Rule 56(c), the opponent must do more than simply show there is some metaphysical doubt as to the material facts .... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S. Ct. 1348 (1986) (footnote omitted). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-28, 106 S. Ct. 2505 (1986). When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

Id., 550 U.S. at 380. To be sure, however, "at the summary judgment stage, video evidence can only discredit a nonmovant's factual assertions if the video 'blatantly' contradicts the nonmovant's position." Simmons v. Whitaker, 106 F.4th 379, 385 (4th Cir. 2024) (citing Iko v. Shreve, 535 F.3d 225, 230 (4th Cir. 2008)).

## III. FACTUAL BACKGROUND

The forecast of evidence, viewed in the light most favorable to the Plaintiff as the non-moving party, shows the following.

Defendant Hansley has been employed by the NCDAC for over nine years. In November 2024, he was a Correctional Sergeant at Alexander. (Document No. 29-7 at ¶ 2: Hansley Dec.). Defendant Baker has been employed by the NCDAC for approximately 11 years. In November 2024, Defendant Baker was a Correctional Officer at Alexander. (Document No. 29-8 at ¶ 2: Baker Dec.). Defendant Harrison has been employed by the NCDAC for approximately five years. In November 20024, he was also a Correctional Officer at Alexander. (Document No. 29-9 at ¶ 2: Harrison Dec.).

On November 11, 2024, Plaintiff was housed in Green Unit at Alexander. (Document No. 29-7 at ¶ 3). At around 9:30 a.m. that morning, Defendant Hansley was assigned to let the inmates out for the dayroom. (Id. at ¶ 4). When Defendant Hansley released Plaintiff, Plaintiff left his cell with some personal belongings in his hands and approached the Defendants, who had entered and remained near the door of the Green Unit. (Id. at ¶ 5; C137, 9:27:58-9:28:15). As Plaintiff approached, he stated in a threatening tone, "I am going to beat your ass when I get a chance." (Id.; see C137, 9:28:31-9:28:39). Because of Plaintiff's threats, Defendant Hansley asked Plaintiff to step into the hallway to separate him from the other inmates. (Id. at ¶ 6). At that time, Plaintiff tossed his belongings on the floor and assumed a threatening stance, as if he were ready to fight the Defendants. (Id. at ¶ 7; Document No. 29-8 at ¶ 6; C137, 9:28:39-9:28:51). In response, Defendants pulled out their tasers and pointed them at Plaintiff. (Id.; C137, 9:28:51-9:28:54). Defendant Hansley ordered Plaintiff to get down on the floor, while Defendant Baker applied restraints to the Plaintiff. (Id. at ¶ 8; Document No. 29-8 at ¶ 7; C137, 9:29:01-9:29:09). Once Plaintiff was in handcuffs, Defendants Hansley and Harrison reholstered their tasers. (Id.; C137, 9:29:11). Throughout the application of restraints, Plaintiff continued to threaten the Defendants, stating he was going to kill them. (Id. at ¶ 9).

Once Plaintiff was assisted to his feet, as the Defendants attempted to escort Plaintiff out of Green Unit and into the hallway towards Green Unit South Core, he almost immediately jerked his head toward Defendant Harrison and spat in his face. (Id. at ¶ 10; C137, 9:29:12-9:29:14). Plaintiff then tried to headbutt Defendant Harrison as Plaintiff screamed threats at the Defendants. (Id. at ¶ 11; Document No. 29-8 at ¶ 11; C137, 9:29:15-9:29:16). As they exited the dormitory, Plaintiff was visibly combative and resisting. (C131, 9:29:17-9:29:18). To protect Defendant Harrison and other staff, Defendants put Plaintiff against the floor to gain control and compliance.

(Id. at ¶ 11; C131, 9:29:18). Plaintiff continued to resist and remained combative. (Id. at ¶ 12; Document No. 29-8 at ¶ 12; see C131, 9:29:18-9:29:55). Once Plaintiff was under control, Defendants assisted Plaintiff back to his feet and continued escorting him out of Green Unit. (Id. at ¶ 13; see C131, 9:29:57-9:30:03).

Around this time, additional corrections staff arrived to assist Defendants with Plaintiff because of his assaultive, threatening, and combative behavior. (Id. at ¶ 14; Document No. 29-8 at ¶ 14; Document No. 29-9 at ¶ 1). With the arrival of additional staff, less than two minutes after the incident began, Defendant Hansley was relieved. (Id. at ¶ 15). As Defendants Harrison and Baker continued to escort Plaintiff to the Green Unit South Hallway elevator with other corrections staff, Plaintiff can be seen smirking in apparent satisfaction. (Id.; C119, 9:30:11-9:30:13). Shortly thereafter, Defendants Baker and Harrison were also relieved and had no further involvement with Plaintiff that day. (Id. at ¶ 15; Document No. 29-8 at ¶ 15; Document No. 29-9 at ¶ 14). None of the Defendants held any feelings of ill will towards the Plaintiff, nor did any of them want to harm him. (Document No. 29-7 at ¶ 17; Document No. 29-8 at ¶ 17; Document No. 29-9 at ¶ 16).

In investigating the incident, prison officials learned that between 7:44 a.m. and 9:21 a.m. on the morning of the incident, Plaintiff made four phone calls to his girlfriend. (Document No. 29-5 at 4-5). In these calls, Plaintiff expressed his frustration with Alexander and discussed his plan to "show out" a little to get moved to a different facility. (Id.). Plaintiff stated he would do "the 6 mo. bid in the hole … to make something happen." (Id. at 5). He also stated, "You can get 1 or 2 of them [officers] but after that they get scared." (Id.).

## IV. DISCUSSION

A plaintiff's failure to respond to a summary judgment motion may constitute waiver or abandonment of a claim. Orbit Corp. v. Fedex Ground Package Sys., Inc., 2016 WL 6609184, at

*15 (E.D. Va. Nov. 8, 2016) (collecting district court cases); Morgan v. City of Charlotte, No. 3:22-cv-00003-KDB-DCK, 2023 WL 4002524 (W.D.N.C. Jun. 14, 2023) (collecting cases); Estate of Edgerton v. UPI Holdings, Inc., No. CCB-09-1825, 2011 WL 6837560, at *4 (D. Md. Dec. 28, 2011). Because Plaintiff has abandoned his claim by failing to respond to Defendants' motion, the undersigned will recommend granting summary judgment for Defendants.

Even if Plaintiff had not abandoned his claim, the undersigned would nonetheless recommend granting summary judgment for Defendants. The Eighth Amendment prohibits the infliction of "cruel and unusual punishments," U.S. Const. amend. VIII, and protects prisoners from the "unnecessary and wanton infliction of pain," Whitley v. Albers, 475 U.S. 312, 319 (1986). To establish an Eighth Amendment claim, an inmate must satisfy both an objective component – that the harm inflicted was sufficiently serious – and a subjective component – that the prison official acted with a sufficiently culpable state of mind. Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996).

This subjective standard requires proof of malicious or sadistic action by a prison official to make out an excessive force claim. This is because prison "[o]fficials are entitled to use appropriate force to quell prison disturbances." Williams, 77 F.3d at 761. "Because officials must act 'in haste, under pressure, and frequently without the luxury of a second chance,' deliberate indifference is not a sufficiently rigorous standard." Id. (citing Whitley, 475 U.S. at 320). "Rather, in these circumstances, in order to make out an Eighth Amendment claim, a prisoner must demonstrate that officials applied force maliciously and sadistically for the very purpose of causing harm." Id. (internal quotations and citation omitted).

Moreover, "[c]orrectional officers do not have to be under physical attack to justify the use of force; they can also use appropriate force 'to preserve internal order by compelling compliance

with prison rules and procedures.'" Shiheed v. Harding, 802 Fed. App'x 765, 767 (4th Cir. 2020) (quoting Brooks v. Johnson, 924 F.3d 104, 112 (4th Cir. 2019)). "'And we owe officers wide-ranging deference in their determinations that force is required to induce compliance with policies important to institutional security.'" Id. (quoting Brooks, 924 F.3d at 112).

Here, the forecast of evidence shows that Plaintiff premediated starting an altercation with corrections staff in order to get moved to a different facility, that he made threats to the Defendants as he approached them in Green Unit, that once he drew near to the Defendants he took a fighting stance as if he were going to assault them, that even after he was restrained, he threatened, spat at, jerked toward, and attempted to headbutt Defendant Harrison and generally remained combative and noncompliant. The forecast further shows that Defendants responded to each of Plaintiff's combative and threatening and assaultive behaviors with only that amount of force necessary to gain the Plaintiff's compliance and restore order.

From this forecast of evidence, a reasonable jury could not conclude that Defendants applied force maliciously and sadistically for the very purpose of causing harm. Rather, the forecast of evidence shows that Defendants used only that amount of force necessary to gain Plaintiff's compliance after Plaintiff threatened the Defendants, was assaultive and combative, and actively resisted the escort out of Green Unit. As such, there is no forecast evidence from which a reasonable jury could conclude that Defendants used excessive force on the Plaintiff in violation of Plaintiff's Eighth Amendment rights.

Because there is no genuine issue for trial, the undersigned will recommend that Defendants' motion for summary judgment be granted. Moreover, because the forecast of evidence does not support that a constitutional right was violated, Defendants would also be protected by qualified immunity. See E.W. ex rel. T.W. v. Dolgos, 884 F.3d 172, 178 (4th Cir.

2018). The undersigned, therefore, will also recommend that summary judgment be granted for this reason.

The undersigned finds that this matter should be dismissed with prejudice pursuant to Fed. R. Civ. P. 56.

## V. RECOMMENDATION AND ORDER

**FOR THE FOREGOING REASONS**, the undersigned respectfully recommends that Defendants' Motion for Summary Judgment (Document No. 27) be **GRANTED**, and that this matter be **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that the Clerk shall update the docket in this matter to reflect the true full name of Defendants FNU Hinsley as Christopher R. Hansley, FNU Harrison as Trenton J. Harrison, and FNU Baker as Adam W. Baker.

## VI. TIME FOR OBJECTIONS

The parties are hereby advised that, pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained in this Memorandum may be filed within **fourteen (14) days** of service of same. Responses to objections may be filed within fourteen (14) days after service of the objections. Fed. R. Civ. P. 72(b)(2).

Failure to file objections to this Memorandum and Recommendation with the District Court constitutes a waiver of the right to *de novo* review by the District Court. Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 315-16 (4th Cir. 2005). Moreover, failure to file timely objections will preclude the parties from raising such objections on appeal. Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Snyder v. Ridenhour, 889 F.2d 1363, 1365 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), reh'g denied, 474 U.S. 1111 (1986).

**IT IS SO RECOMMENDED**.

Signed: August 31, 2026

David C. Keesler
United States Magistrate Judge